et al. Oral argument not to exceed 15 minutes for the plaintiffs, 15 minutes to be shared by defendants. Ronald L. Mason for the appellants. When you know your case is next, you're supposed to be marching up here. You don't have to wait for the gentleman's last syllable. Okay? We're ready. May it please the court. I represent Bunn Enterprises Inc. in a case that it was a contract. The contract itself requires that Bunn pay into the pension fund a sum certain for all hours paid to each employee by the employer under the agreement. A first audit that was conducted that the pension fund had a right to do found that when it conducted its audit under this agreement that the company owed approximately $9,000 in money to the fund. This issue was over one employee who had retired from the union in, I believe, 2008. In looking at the audit, Bunn realized that it did, in fact, make an error. And Bunn did half and did some work and did its own audit and determined that under the agreement that Bunn was in error and the employee was paid the pension money directly instead of that money going to the fund. That turned out for Bunn to be approximately a little over $4,000. And this should have ended the matter that Bunn should have been able to have sat down with the auditor, explained the records, explained the differences, and followed the union's instructions. And the union is a different entity than the pension fund. The union ordered and told the auditor to go back and redo the audit. And instead of following the directions of the pension fund, the auditor followed the directions of the union and went back and re-audited the company. At that point in time, then the $1,000 approximately in back money, because what happened was the auditor then said, well, this guy who is retired, who has been working for the company to supplement... The same guy? The same one guy? The same person? The same person. $4,000? Yes, ma'am. The same person. That this one person who, after he retired, he was a 30-year good employee, he wanted to supplement his retirement income, and the company continued to employ him. They had him doing fence work, cutting grass, deliveries back and forth, and general farm work for the company. In addition, when the company did its audit... It was on the payroll. On the payroll, on the books, at a much different lower rate than an operating engineer's rate. The company, when they went back and looked at their books, said, uh-oh, we made a mistake. In 2008, after he retired, I believe he worked approximately 150 hours doing actual operating engineers' work. In addition, in 2009, the company determined that about 183 hours he worked doing operating engineers' work. He worked no hours and... A lot of mistakes here. I'm sorry? There's a lot of mistakes here. Yeah. Don't disagree, because what the company had done, and mistakenly had done, said he had, quote, retired from the operating engineer's fund, and therefore... From the union, or from the job? From the union. He had retired from the union. Retired from a union? Well, I mean, he turned in his pension. He said he was retiring. Yes, ma'am. I see. To start getting paid. Yes, because you have to process the paperwork to do that. Yes, I got it. So when Vaughn... Counsel? Yes, ma'am? You're arguing that... Your position is that they should only get benefits for covered work. Yes, ma'am. Absolutely. Now, according to the Applebee's brief, even your client, Mr. Vaughn, who's the owner of Yes, ma'am. It's very easy. It's a red herring. The fact of the matter is that the union will allow the employees, and they actually... One was health insurance, and the other was the pension fund contributions. On the health insurance side, the union argued, and the pension fund argued, that the employees could have maintained their insurance, even though they were not... That money was not being credited by making voluntary payments. In this situation, the company, on behalf of the owner, made voluntary payments that the union accepted so that he could have a pension. Anybody, if they're working there and they want to make voluntary contributions, the union will accept it. It's not that the company was somehow this mean employer who was denying this individual his pension rights. If that individual wanted to voluntarily make payments, the pension fund would have accepted it. That's what they did for Mr. Vaughn in this case, and it's a red herring on the issue as to whether or not the fund is entitled to payments for covered work and work that is not covered. Instead of looking at the entire contract like the First Circuit did in the Howlock case, where they did a complete analysis of the contract, and that case was reversed on other grounds, but their analysis was dead on with respect to how you look at a contract to determine whether the hours are covered or not. It's different, though, than the Southern District of Ohio has decided, Grimaldi, or read it. Yeah, I mean, basically what they... But the situation, we're not presented with an argument here to revisit Grimaldi. Well, we think that Grimaldi applies to this case. The reading of it. The reading of it that the judge did was that the judge distinguished Grimaldi. And basically, if you accept the judge's decision under Grimaldi and his interpretation, he's limited that case to its facts. Because what he did was he said that Grimaldi was distinguishable from our case because in Grimaldi, there was a stipulation as to what was covered work and what was not covered work. And therefore, on the basis of that single stipulation, on that single fact, Grimaldi doesn't apply. And the fact of the matter is Grimaldi is directly on point and does apply. Because my client's employee, Mr... I can't remember his name right now. But he was doing work that was not covered. I sincerely doubt that the pension fund is going to argue in the district court when this case gets remanded. And I do believe it will be remanded. That when the case gets remanded, they're not going to make an argument to the judge that cutting grass, mending fences, farm work, and deliveries to and from the company's office is covered work under the collective bargaining agreement. And that's what he was doing. And that's what the fund once paid for. And the district court is the only court in the Sixth Circuit that has, in fact, determined that Grimaldi does not apply to these facts from the standpoint of allowing an individual company to contest a determination as to whether or not the work is covered or not. In Grimaldi, the company did not keep very good financial records. And this court in Grimaldi allowed that company, even though they did not have good records, to, in fact, put on evidence that it had its burden to do to allow it to prove that this was not covered work. Here in... That's not the agreement, though. The way it's written, require the signatories to contribute the appropriate pension benefits or the appropriate contributions for all hours worked without making a distinction to covered versus non-covered. No, ma'am. If you look at the contract, there are provisions in the contract where it says, let me get Article 1 and Article 2. Article 1 sets out the type of work in the union's collective bargaining agreement. Article 2 limits the contributions to covered work. That's Article 2 of the union's contract. That's what this case is about. Is this covered work under the union's contract? If it is, they have to pay the money. My client did the audit, determined that there was $4,000 owed of covered work. He paid it. The union accepted that money as a down payment on the balance owed, but, in fact, this is the covered work that he determined that was actually owed. Can you give us a short answer to where the district court erred? By distinguishing Grimaldi on the fact that there was a stipulation? That's it. He looked at that. He said that stipulation, Grimaldi goes out the window. However, the district court, had it noted that issue about the stipulation, it would have ruled differently because it had to once it looked at the contract and said only covered work. I mean, by not applying Grimaldi and holding it basically to its facts, then the court goes back to the pre-Grimaldi cases. The pre-Grimaldi cases. I'm a little dry mouthed at the moment. I'm sorry. The pre-cases all dealt with hours total. That's the way they held. So, when he distinguished Grimaldi and said that doesn't apply, he goes back to the pre-Grimaldi cases. Finally, I noticed that I've got less than a minute. I'd like to at least point out, this is not the only case in the Sixth Circuit where the district courts have looked at similar type cases. And we cited them in our brief and I'd like to at least point them out to you that an MMP Master Plastics of the Eastern District of Michigan stated the under Grimaldi that the employer has a right under Grimaldi to produce evidence that the work was not covered. That's our case. Spencer, Eastern District of Michigan. Employer has right under Grimaldi to prove whether or not the work was covered work. Helms and Associates, Northern District of Ohio, followed Grimaldi and held right to determine if work is not covered or not was a right the employer had. D'Alessandro, Eastern District of Michigan, also followed Grimaldi. We don't need you to recite them again. Okay, but I'm trying to say that this district court, in my case, is the only district court that has looked at Grimaldi and said it doesn't apply. Counsel, you will have a few minutes on rebuttal, I take it. Yes, ma'am. I've got three minutes reserved. All right, we'll hear from you again. Thank you. Good morning and may it please the Court. I'm Dan Clark on behalf of the Appellee, the Ohio Operating Engineers, fringe benefit funds. I guess I'd like to start where Mr. Mason left off and squarely address our position on the Grimaldi decision and its applicability. Well, you know what he's telling us. He's telling us that the court misunderstood or bypassed the distinction that there is a stipulation in that case, right? Yes. Is that wrong? Counsel, wrong about that? Yes, I think counsel for the appellate misstated what the stipulation was in Grimaldi. In Grimaldi, the parties stipulated that contributions are not due to the fringe benefit funds for non-covered work. The contract in this case requires contributions be paid for all hours paid. It makes no distinction between covered and non-covered work. So in Grimaldi, the court was facing an employer that didn't have records, allowed the fund to evaluate what work is covered and what isn't, and therefore who bears the burden to identify hours as covered or non-covered. Here, the distinction between covered hours, non-covered hours, and how the employer has recorded hours as covered or non-covered is immaterial to the question of the number of hours for which contributions are due. What's the specific language in the document that you rely on? Mr. Mason read us information where he says, oh yes, there's benefits only due for the covered work. Article 5, paragraph 5, requires contributions for all hours paid. Judge Donald, I believe your question to Mr. Mason does say all hours worked. All hours worked is one way it could be phrased. In this court's River City decision from 2004, that was a contract that required contributions for each hour worked. And this court said it's just a distinction between what type of work, whether it's working or non-working time. In that other case, when the word, the selected word was work, is that distinguishable? So that people then went, well, work means covered work. No? I think that was- Because paid would suggest, we don't care what you're doing. In River City, in 2004, this court said each hour worked doesn't make a distinction between covered and non-covered. So we're going to treat it as all hours. Our language in this contract is one step further, and even distinguishes, pulls away from the concept of work entirely, and just focuses on hours paid. And there's just a practical reason that my client has to deal with every day that is consistent with ERISA regulations, and also this court's policy rulings. And in Grimaldi, which tried to reduce the burden on fringe benefit funds to calculate the amount of contributions owed. We have one order- A litany of cases in this circuit that hold differently. What do you say to that? I think that this court in Grimaldi was trying to make sure that the burden fell to the employer, not to the fringe benefit fund, to determine- to look at the records. And that the employer is required to keep good records, and an employer that doesn't have good records can't challenge that. Here, through this contract language, the union and the fund avoid the need to even evaluate what's the nature of the work. My client has one auditor for the entire state of Ohio. We can't know whether a retired employee of BUN Enterprises is one day making deliveries for the company- An efficiency. Every hour. It's absolutely. BUN Enterprises is primarily engaged in road construction. Their operating engineer employees are doing road projects. We can't have somebody at a job site saying, well, is this person on a piece of equipment, or are they doing deliveries or mowing the grass? So our auditor goes in, because it's on hours paid, and can look at the payroll records that the employer generates and says, all we do is multiplication. You've paid these employees for this number of hours, you owe this dollar amount. And what that also does, when we get to the litigation stage, is we don't have disputes over what was Mr. Newland doing on Tuesday, May 5th. Was he mowing the grass, doing farm work, or was he working as an operating engineer? Here, Mr. BUN testified before the district court- The idea wouldn't be that you had to know it, but that the employer had the ability, the opening, to contest certain hours. You would have the presumption they're all payable. You know, contributions are owed for all hours. That's a presumption. His point is other cases allow for, obviously you recited the holdings, allow for an employer to challenge and prove non-covered work. And in response to that, some collective bargaining agreements make a distinction. It's just about your, it's your agreement. Yes, the remodeling agreement was one that that distinction mattered to determine contributions. This collective bargaining agreement eliminates that as a meaningful distinction, and for good reason. The auditor looks at the employer's payable records and just does multiplication. So our, at the summary judgment stage, we don't have to have a dispute about what was Mr. Newland doing. We had Mr. BUN testify at the preliminary injunction hearing that yes, Mr. Newland was, for a portion of his time, doing covered work. Working on pieces of heavy equipment. And sometimes not. Sometimes not. You define work in the first part of the contract. Why define work early on in the contract if the term is going to be used colloquially throughout the contract? And you make a point of defining work, but you say really, this is all about hours paid and we don't have to look at the character and nature of the work. So what's the rationale for that? Hours worked has a number of meanings throughout the collective bargaining agreement to determine, and I guess I'll let counsel for the union address just more of these broader issues, but in terms of terming work jurisdiction, what union is assigned what work. Employers enter into multiple agreements. My truck drivers are teamsters. My equipment operators are operating engineers. I have laborers. So in determining what union gets what work, that's important to have that clearly defined. But additionally, elsewhere in the collective bargaining agreement, there are hours worked for overtime purposes. That is a meaningful term. Article 5 that addresses fringe benefit contributions that we're here to enforce today doesn't use the term hours worked. It doesn't use worked. It uses hours paid. So that definition is meaningful in the collective bargaining agreement, but not for the purposes of determining collective bargaining or fringe benefit contributions. Unless the panel has any further discussions, I'll allow Ms. Petinelli to continue. Fine. Thank you. Good morning. May it please the court, I'm Joan Petinelli on behalf of the International Union of Operating for Local 18. We join in the arguments of the funds that the collective bargaining agreement in this case requires contributions for all hours paid to an employee regardless of the nature of the work. In this case, the only claim against Local 18 and Mr. Lucas was for tortious interference with contract. And that is based upon the allegation that Joseph Lucas, Local 18's district representative, requested the auditor in this case to go back and include all of this particular employee, Delbert Newton, to include all of his hours in the audit. Now, this was decided as to Local 18 and Mr. Lucas by the district judge on a motion for judgment on the pleadings. So this court is faced with a de novo review of that decision. If we rule in favor of bond regarding the interpretation of the contract, should we then remand this to the district court on the tortious interference with contract issue? No, Your Honor. There are other grounds that were raised by Local 18 and Mr. Lucas in the district court as to why their motion for judgment on the pleadings should be granted. There were four grounds, actually. The first one was that there was no breach of the contract. But even assuming if this court were to say that the funds breached the contract by requiring all hours to be paid, the additional arguments for Local 18 and Mr. Lucas were that in order to show a tortious interference with contract, you not only have to show a breach of the contract, but you also have to show acting with improper justification or no lack of justification. In other words, that the interference with the contract was improper. And in this case, there is decades of precedent in the Southern District of Ohio, which would support the alleged contact. And we take the allegations of the complaint to be true for a motion for judgment on the pleadings. If the allegation were to be true that Mr. Lucas requested the auditor to include all hours paid for Mr. Newlin, there is precedent supporting that conduct in the Southern District of Ohio going back almost 20 years. And those are the decisions we cited in the brief. I won't recite them. But they involved, and at least two of them involved, the exact same contract language in this case. The exact same contract. The Ohio heavy highway contract between Local 18 and various employers. Tell me again, the precedent, the long-standing precedent, Southern District of Ohio upholds the directing of a re-audit? Is that what we're talking about? No. What I'm saying is, Your Honors, that the precedent is for, based upon, is the interpretation by the Southern District of Ohio of this contract language, that it would require, actually, payment by... And then Saunders and Marbley have both held. Yes, exactly. In the Noe case versus R.D. Jones Excavating, Oran versus Shope, Oran versus Keim Concrete, and Oran versus Maintenance Unlimited. I believe the last three, actually, are the exact contract language in this case. So, to go back to the tortious interference with contract claims, the plaintiff would have to show lack of justification on Local 18's part to direct the auditor to include all hours paid to Mr. Newland. That's implausible that the plaintiff could do that in this case, given the precedent supporting the interpretation, Local 18's interpretation, of the collective bargaining agreement. So, because the district in which the alleged conduct took place had interpreted, for many, many years, this very contract language to, yes, require contributions to the pension funds for all hours paid, Local 18 cannot plausibly have been said to improperly interfere with the collective bargaining agreement. Second ground, second reason that we requested the district court for judgment on the pleadings and on a basis on which this court can confirm is that Local 18 is actually a party to the collective bargaining agreement. It is, and is therefore, not a third party outside the confines of the collective bargaining agreement that can be held liable for tortiously interfering with a breach by one of the parties. And for the same reason, Joseph Lucas, who's just a district representative, and there's no allegation that he was acting as anything other than a representative of Local 18, acting in Local 18's best interest in this case. There is no basis to say that he is the agent of its principle could be held liable for tortious interference with a contract to which his principle is a party. The final ground is that we raised in the district court, which the district court did not reach, but this court could reach if it needed to. I don't think it needs to, is that preemption by the Labor Management Relations Act, it is a tort claim where the state tort claim is inextricably intertwined with or substantially dependent upon the terms of a labor agreement. This is exactly what we have here. The biggest issue in this case, and the only basis for which any tortious interference claim could be brought, is the collective bargaining agreement's terms itself. And this court is obviously required to interpret those terms in order to determine if there's a breach of the collective bargaining agreement. I see my time is up, and unless the panel has any questions, I would thank the court and ask that the court affirm the judgment of the district court. Thank you. Thank you. Your Honor, I would like to point out to you in our brief on page 23, we quoted the language from Article 2, Paragraph 3 of the collective bargaining agreement. In the last portion of it says that the companies are required to make payments to, and I'll quote, the partnership fund safety and educational fund payments required under Article 5 for all work performed within the work jurisdiction outlined in Article 1 of this agreement. That is the language that limits... There's a limiting word in there, like under Article 5. I mean, is that what you and your brother counsel differ on this? Yes, ma'am, because we're saying that this is Article 2 is saying what is the limitations on the all-hours work, and it says that we're required to make the payments with respect to the work outlined in Article 1. And outlined in Article 1 is very specific work that is the covered work under this collective bargaining agreement. And their claim that in a different section it talks about hours worked, well, those hours worked are limited by the actual work that's being done in Article 1 and 2. And they want to ignore Article 1 and 2 because it doesn't fit their theory. In addition, on River City, I'd like to point out that that was not an issue over whether or not the employees were working covered work or not. It was an issue over the quality of the work and the amount of hours the employer was paying for the covered work that was being actually performed. And the claim that somehow because that was for all-hours work, that that applies in this case, there was no issue that the employees were working under their covered work, under River City. It was just simply whether or not the hours that they actually got billed for matched what the employer thought he should be paying for that work that was all covered work. It is an entirely separate case and issue. With respect to the union's issue, we firmly believe that this case should be remanded. The court based its dismissal of the union case on the fact that the fund had, in fact, been entitled to all that work, and therefore there was no tortious interference. In fact, there was. The witness for the union for the pension fund testified at the lower court. The court didn't consider any of this? No. Yes, so you needn't elaborate on it other than to say the court needs to have a chance. We certainly would agree to that point and think that it should be remanded and let the court look at the entire motion. Thank you all. My time is up. I greatly appreciate it. Thank you, counsel. All right. We have your matter and the court will consider it carefully. You'll hear from us. Thank you.